[No. 46575. En Banc. December 31, 1980.]

HARLEY H. HOPPE, *Appellant*, v. KING COUNTY,
ET AL, *Respondents*.

*Schweppe, Doolittle, Krug, Tausend & Beezer,* by *Robert R. Beezer* and *David G. Knibb, Special Prosecuting Attorneys,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *William C. Severson, Deputy,* for respondent King County.

*Slade Gorton, Attorney General,* and *Larry R. Schreiter, Assistant,* for respondent State.

DOLLIVER, J.—King County Assessor Harley H. Hoppe brought this action against King County, the State Department of Revenue, and certain named King County and state officials, challenging the validity of King County ordinance No. 3975, dated December 4, 1978, levying 1979 property taxes. Counts 1 and 2 were brought in Hoppe's official capacity of King County Assessor. Count 3 was brought by Hoppe and "John Doe" in their individual capacities as taxpayers.

Count 1 of the complaint alleged that ordinance No. 3975 violated statutory limitation regarding property tax levies and that the alleged violations resulted in part from the

effect of previously issued Department of Revenue bulletins interpreting one aspect of one such property tax levy limitation. Plaintiffs sought with respect to count 1 the impoundment of certain tax revenues and a declaratory judgment that the 1979 tax levy ordinance and the Department of Revenue's interpretive bulletins were invalid. Count 2 alleged the entitlement of the assessor to the appointment of a special deputy prosecuting attorney to represent the assessor in his official capacity in the prosecution of this action. Count 3 realleged most of count 1.

At a preliminary hearing, the trial court ordered the appointment of special prosecuting attorneys, denied defendants' cross motions to dismiss because the complaint failed to state a cause of action in that plaintiffs had no standing and, on motion of plaintiffs, dismissed count 3. Following a subsequent hearing, the trial court granted defendants' motion for summary judgment and dismissed the complaint. Pursuant to stipulation of the parties, the question of plaintiffs' attorney fees was considered at a later date at which time an order fixing compensation for attorney fees was entered.

The King County Assessor is responsible for identifying and valuing local real and personal property subject to taxation within King County. After the assessment is completed, it is certified to the State Board of Equalization to assure uniformity and equality. Subsequent corrected assessed values are then certified to the State Department of Revenue which then decides the amount of state taxes to be collected.

The valuation of public utility company property is additionally made by the State and is labeled centrally assessed property. The State determines the proportional amount of that value applicable to each county, equalizes it, and then certifies it to the assessor. The value is then treated as any other value in the county.

Throughout this process, the King County Council also makes a determination as to the amount to be collected from county tax levies. Both the state and county levies are

later certified to the assessor. With these levies, the assessor will calculate the tax rates necessary to raise the levy amounts certified to him pursuant to certain statutory limitations.

Prior to *Burlington N., Inc. v. Johnston,* 89 Wn.2d 321, 572 P.2d 1085 (1977), it was the standard practice by the State to equalize the apportioned value of centrally assessed property by lumping together both real and personal property and using a single indicated ratio. This resulted in an understated value of utility property since real property valuation tended to lag further behind than personal property. In *Burlington Northern,* however, this court ruled that separate real and personal property ratios must be applied by the State to each category of operating property.

As a result of the *Burlington Northern* decision, the defendant State recertified assessed utility values for assessment years 1972 through 1977. Upon receiving the corrected equalized values from the State, the county computed the amount of supplemental taxes on state assessed property and billed accordingly.

The declaratory relief requested by Hoppe would:

(a) [determine] the responsibilities of the parties with respect to the aforementioned supplemental assessments on centrally assessed property which are in excess of the 106% limitation as established by the law codified in RCW 84.55.010; (b) [declare] the aforementioned levy ordinance adopted by King County invalid because it violates the 106% limitation established by said law, and (c) [declare] the interpretation by the Department of Revenue of said law as expressed in the aforementioned Property Tax Bulletin, invalid to the extent that it purports to exempt from the 106% limitation all increases in assessed value of centrally assessed property, regardless of whether or to what extent such increases result from new construction and improvements to such property.

He asserts his standing and bases his argument on RCW 84.52.010, which reads, in part:

All taxes shall be levied or voted in specific amounts, and the rate percent of all taxes for state and county purposes, and purposes of taxing districts coextensive with the county, *shall be determined, calculated and fixed by the county assessors of the respective counties, within the limitations provided by law,* upon the assessed valuation of the property of the county, as shown by the completed tax rolls of the county, and the rate percent of all taxes levied for purposes of taxing districts within any county shall be determined, calculated and fixed by the county assessors of the respective counties, within the limitations provided by law, upon the assessed valuation of the property of the taxing districts respectively: *Provided,* That when any such county assessor shall find that the aggregate rate of levy on any property will exceed the limitation set forth in RCW 84.52.043 and RCW 84.52.050 as now or hereafter amended, he shall recompute and establish a consolidated levy in the following manner:

(Italics ours.)

Hoppe appealed from the order granting summary judgment, denying his motion for partial summary judgment and dismissing the complaint with prejudice. The county cross–appealed from the orders allowing Hoppe standing to bring the action, appointing special deputy prosecuting attorneys to represent the assessor in the action, and fixing compensation for the special deputy prosecuting attorneys. We confine our opinion to the cross appeals and, as this is dispositive of the case, we do not consider the merits of the case in the appeal by Hoppe.

It was the opinion of the trial court that:

Harley H. Hoppe, in his official capacity as King County Assessor, has standing under RCW 84.52.010 to maintain this declaratory judgment action to determine the effect of the 106% tax limitation codified in RCW 84.55.010 upon the King County Levy Ordinance and 1979 property tax collections which are the subject of this action . . .

We disagree and hold that: (1) Hoppe has no standing; (2) the prosecuting attorney had no obligation to represent Hoppe and thus the appointment of special prosecutors

under RCW 36.27.030 was improper; and (3) no attorney fees should be awarded to the special prosecuting attorneys.

I

■■ Public officers have only those powers expressly granted or necessarily implied by statute. *State ex rel. Holcomb v. Armstrong,* 39 Wn.2d 860, 239 P.2d 545 (1952); *accord, Port of Seattle v. State Utils. & Transp. Comm'n,* 92 Wn.2d 789, 597 P.2d 383 (1979). Hoppe has failed to cite any authority conferring standing on assessors to challenge the validity of duly enacted levies or to enforce the levy ceiling limitation contained in RCW 84.55.010.

Furthermore, Hoppe misconstrues the meaning of RCW 84.52.010. This statute does not grant the assessor discretion or authority to challenge in court the levy *amounts* set by legislative bodies on the ground they exceed the 106 percent limit of RCW 84.55.010. Rather, RCW 84.52.010 states that the *"rate percent* of all taxes . . . shall be determined, calculated and fixed by the county assessors . . . within the limitations provided by law". (Italics ours.) If the aggregate rates for levies certified to the assessor by various taxing districts either exceed the overall statutory rate limits established by RCW 84.52.043 or the 1 percent tax rate limitation established by RCW 84.52.050 and Const. art. 7, § 2, then the assessor is required to recompute the *rate* so it does not exceed constitutional or statutory limitations.

The statutory obligation to set rates does not give the assessor a roving commission to bring a lawsuit to question levy amounts. This court has spoken to this question specifically in *State v. Wiley,* 176 Wash. 641, 30 P.2d 958 (1934). In that case, the Grays Harbor County Assessor had refused to extend onto the tax rolls the property values equalized by the State Board of Equalization pursuant to Rem. Rev. Stat. § 11224, the predecessor statute to RCW 84.48.120. In a mandamus action brought by the State, the assessor defended his refusal to act by contending that the state board had acted arbitrarily, capriciously and without

authority in raising valuations. In granting mandamus, the court stated:

> The question here presented is . . . Can a public officer, charged with the performance of a ministerial duty, refuse to perform that duty on the ground that a superior officer, under whose direction he is required to act, has proceeded arbitrarily, capriciously and on a fundamentally wrong basis? There is practical unanimity of authority that he cannot. *People ex rel. v. Pitcher,* 61 Colo. 149, 156 Pac. 812, Ann. Cas. 1918D, 1185 . . .

*State v. Wiley, supra* at 643.

The action of the assessor in setting rates is primarily ministerial. After the assessor has completed the assessment process and certified the values to the appropriate officers (RCW 84.48.130), the only remaining duties are to calculate the levy *rates* (RCW 84.52.010) and to extend the taxes certified by the levy authorities into the tax rolls (RCW 84.52.080; 84.48.120). Just as the assessor cannot, as a ministerial officer, refuse to perform that duty under the circumstances set forth in *State v. Wiley, supra,* so Hoppe has no standing to challenge in his official capacity, the action of the county council in setting the amount of the levy. Because we find Hoppe to have no standing under our rules as to the duties and scope of authority of ministerial officers, we need not address his claim of standing under the general standing tests set forth in *Association of Data Processing Serv. Organizations, Inc. v. Camp,* 397 U.S. 150, 25 L. Ed. 2d 184, 90 S. Ct. 827 (1970).

Hoppe claims *Department of Revenue v. Hoppe,* 82 Wn.2d 549, 512 P.2d 1094 (1973), is authority for the proposition that the assessor may challenge the amount of the levy. It is not. That case held that the King County levy had exceeded the limitation imposed by Senate Joint Resolution No. 1 (Const. art. 7, § 2 (amendment 55)). Once it was determined Senate Joint Resolution No. 1 limited the amount of the levy, the court then described the method under RCW 84.52.010 by which the assessor would recompute the rates in order to conform to the new levy amount.

At no time was there any suggestion that the assessor had standing to challenge the validity of the legislatively enacted levy.

Hoppe's fear that unless he brought this action he would suffer a penalty under either RCW 84.09.040 or 84.52.080 is ill founded. RCW 84.09.040 imposes liability only if an assessor "refuses or knowingly neglects to perform any duty enjoined on him" by RCW Title 84. As demonstrated above, Hoppe has no right to bring this action. As he has no right of action he has no duty; thus he has no liability. RCW 84.52.080 requires the assessor to certify a "correct list of taxes levied". This is nothing more than the requirement that the assessment list and tax roll of the assessor contain a correct account of the taxes levied by the legislative taxing authority, which levies have been certified to the assessor under RCW 84.52.070. RCW 84.52.080 does not require or authorize the assessor to inquire into or certify the legality of the taxes themselves.

## II

RCW 36.27.030 provides:

When from illness or other cause the prosecuting attorney is temporarily unable to perform his duties, the court or judge may appoint some qualified person to discharge the duties of such officer in court until the disability is removed.

The power of the court to appoint a special prosecuting attorney is limited to cases where such an appointment is provided by statute. *State v. Heaton,* 21 Wash. 59, 62, 56 P. 843 (1899); Const. art. 11, § 5. In order for a special prosecutor to be appointed, the prosecuting attorney must be unable to perform a duty of that office. Hoppe had no standing to bring this action in his capacity as assessor, therefore, the King County Prosecuting Attorney had no duty to bring this action on behalf of Hoppe. Furthermore, nothing in the duties of the prosecuting attorney (RCW 36.27.020) requires that officer to bring an action simply because a request is made by another county officer or to

provide legal representation. While RCW 36.27.020(2) does require the prosecuting attorney to "[b]e legal adviser to all county . . . officers", this is not a requirement that the prosecuting attorney appear for or represent a county offi-cer. *Bates v. School Dist. 10,* 45 Wash. 498, 88 P. 944 (1907). It is certainly true that the King County Prosecut-ing Attorney and Hoppe disagreed. It is also true the pros-ecuting attorney determined Hoppe was not entitled to representation. This is hardly, however, a disability under RCW 36.27.030 nor is it a conflict of interest as claimed by Hoppe. The disagreement did not give Hoppe a warrant to obtain a special prosecutor and bring a lawsuit to assert his particular view of the law. Hoppe was entitled to second–guess the judgment of the prosecuting attorney. He was not entitled to do so with a special prosecutor at taxpayers' expense.

III

■ If Hoppe was not entitled to representation, his counsel cannot be entitled to compensation. Public funds may not be expended except as authorized by law. *Ashley v. Superior Court,* 82 Wn.2d 188, 193–94, 509 P.2d 751 (1973), *modified,* 83 Wn.2d 630, 521 P.2d 711 (1974). Pay-ment may not be made to a special prosecutor unless there is a provision in the statute. *Fritz v. Gorton,* 83 Wn.2d 275, 517 P.2d 911 (1974); *Presby v. Klickitat County,* 5 Wash. 329, 31 P. 876 (1892); *see Seattle School Dist. 1 v. State,* 90 Wn.2d 476, 585 P.2d 71 (1978). The statutory provisions for the payment of special prosecutors, RCW 36.27.030 and RCW 36.32.200, have no relationship to the situation in this case. Counsel for Hoppe are entitled to no attorney fees paid from public funds.

To summarize: We hold Hoppe has no standing to bring this action in his capacity as King County Assessor; there is no authority for the appointment of a special prosecuting attorney to represent Hoppe; and counsel for Hoppe are entitled to no attorney fees paid from public funds.

It is so ordered.

Utter, C.J., and Rosellini, Stafford, Brachtenbach, Horowitz, Hicks, and Williams, JJ., concur.