

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE AUG 0 8 2019
Fairhurst, C.J.
CHIEF JUSTICE

This opinion was
filed for record
at 8am on Aug 8, 2019

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| IN THE MATTER OF THE APPOINTMENT OF SPECIAL DEPUTY PROSECUTING ATTORNEY | No. 95945-5<br><br>En Banc<br><br>Filed ____ AUG 0 8 2019 |

MADSEN, J.—This case has its genesis in a dispute between the Franklin County Superior Court judges and the Franklin County clerk concerning the move to electronic court files. At issue is whether the Franklin County Superior Court judges validly issued an order of appointment under RCW 36.27.030, thereby securing their own special deputy prosecuting attorney to pursue a separate civil suit. For the reasons discussed below, we hold that the order is invalid; while the judges are free to sue the clerk, they must do so at their own expense.

## FACTS

In 2015, the Administrative Office of the Courts (AOC) began to implement a new superior court case management system, known as Odyssey, in counties around the state of Washington. Odyssey is a $50 million endeavor, and AOC's goal is to implement a fully electronic case management, calendaring, and document storage and retrieval

system for the superior courts. Odyssey was to be installed in most counties by the end of 2018.

Franklin County was an early adopter of the Odyssey record system. The county clerk and the superior court judges largely cooperated with the transition to Odyssey and anticipated that the court files would be paperless by 2018. To facilitate this transition, the clerk gave the superior court judges wireless access devices and expressed his willingness to accommodate other requests. The transition to Odyssey progressed to the point where both the superior court administrator and the clerk "signed off" that the system was fully operational in Franklin County. ACP[1] at 89-90.

Shortly after the clerk's transition to a paperless file system was fully implemented, the superior court judges of Franklin County directed the Franklin County clerk to continue making and maintaining paper files. The clerk declined to do so as his budget was insufficient to allow him to maintain duplicate paper files. The clerk also deemed it unnecessary to maintain duplicate paper files as no one had accessed the existing paper files for over a year.

Declaring an emergency, the judges adopted Benton/Franklin Counties Superior Court Local General Rule (LGR) 3. LGR 3 orders the clerks of Benton and Franklin Counties to "keep and maintain paper files for all cases and file types, by forthwith filing all pleadings and papers in paper files, except as may be otherwise authorized in writing by the Court." ACP at 183.

---

[1] The parties have adopted "ACP" as the designation for petitioner's RAP 9.11 submissions that were filed with this court on September 11, 2018.

When Franklin County Clerk Michael Killian maintained his refusal to create duplicate paper files, the judges threatened legal action. The Franklin County Prosecuting Attorney Shawn Sant appointed a special deputy prosecuting attorney pursuant to RCW 36.27.040 to represent Clerk Killian with respect to any contempt or other legal action that the judges threatened to pursue.

Although Prosecutor Sant could discharge his mandatory duty of providing legal advice to both the judges and Clerk Killian with respect to paper court files, he offered to appoint a special deputy prosecuting attorney to advise the judges as well. After soliciting input from the judges, W. Dale Kamerrer was ultimately appointed. It was Prosecutor Sant's purported intent that Mr. Kamerrer would assist the judges to reach a negotiated resolution of the paper records dispute with Clerk Killian.

Instead of engaging in discussions regarding how best to move to a paperless system and what steps might be taken to address the bench's concerns, Mr. Kamerrer initiated a suit against the Franklin County clerk. Mr. Kamerrer filed this lawsuit without prior permission from Prosecutor Sant. Upon receiving notice of the filing of the suit, and viewing the action as a lawsuit against the county, Prosecutor Sant directed Mr. Kamerrer to cease further work on the lawsuit.[2] Prosecutor Sant halted the lawsuit in part due to a lack of funds, as neither his budget nor the judges' budget included an appropriation for the purpose of filing lawsuits against a county official at the request of another county official.

---

[2] A similar directive was issued to the attorney appointed to represent Clerk Killian.

Mr. Kamerrer, on behalf of the judges, sought to remove the financial barrier to the lawsuit against Clerk Killian by asking the board of county commissioners (Board) to appropriate funds to pay for the action. Prosecutor Sant opposed the request on the grounds that he is not required to initiate suit on behalf of one county officer against another county officer; that if the judges' action is funded, the county would be required to expend a similar amount of money to defend the clerk; that mediation is a better option; and that the legal question may be resolved in a cost-effective manner by requesting an opinion from the Attorney General's Office.

After hearing from Mr. Kamerrer, Prosecutor Sant, Clerk Killian, and others in public meetings, the Board declined to appropriate the funds needed to litigate the judges' lawsuit in the trial and appellate courts.[3] The Board's final decision on funding the lawsuit was made after Clerk Killian agreed to provide paper files, upon request, to the judges for another 3 to 12 months so that any remaining transition problems could be worked out. The Board's decision was in accord with the judges' stated willingness to resolve any technical issues related to Odyssey and the Board's belief that the public would be better served by expending funds on any necessary technological upgrades than on litigation. In light of the Board's decision, Prosecutor Sant revoked Mr. Kamerrer's special deputy appointment in a letter that repeated his availability to provide legal advice to the judges.

---

[3] Costs of the lawsuit were estimated at $14,000 to $75,000.

The judges disagreed with the Board's decision. The judges communicated their dissatisfaction with the Board, indicating that the Board did not sufficiently appreciate "[t]he magnitude of the disagreement between the Court and the Clerk." ACP at 192. A portion of the letter to the Board stated:

> The Prosecuting Attorney cannot represent the Court in this matter. He has acknowledged that by appointing outside counsel for both the Court and the Clerk. This brings RCW 36.27.030 into play, and that statute authorizes the Court to appoint an attorney to stand in for the Prosecutor and compel the County to compensate that attorney for his or her services. We prefer that appointment and compensation be initiated by the Prosecutor and supported by the Board of County Commissioners, but that has not happened. Accordingly, the Court will exercise its authority to appoint counsel and compel compensation, with the amount of that compensation being subject to review and approval by the Court.

ACP at 194.

On May 21, 2018, the judges signed an "Order of Appointment" in a matter they entitled "In re the Appointment of a Special Deputy Prosecuting Attorney." Clerk's Papers (CP) at 2-4; ACP at 199-201. The order of appointment, which was filed with the Franklin County Clerk's Office on May 22, 2018, was entered in chambers. Neither the Board nor Prosecutor Sant was provided with notice that the order of appointment would be considered by the judges on May 21, 2018. Nor were they provided with an opportunity to tender legal arguments in opposition to the entry of the order of appointment. The judges did not serve a copy of the signed order of appointment on either Prosecutor Sant or the Board, who learned about the order only when Clerk Killian delivered a copy to Prosecutor Sant's office.

The order of appointment appoints W. Dale Kamerrer "as a Special Deputy Prosecuting Attorney to represent the plaintiffs in" "the action entitled *The Judges of the Benton and Franklin Counties Superior Court: Judge Joe Burrowes, Judge Alex Ekstrom, Judge Cameron Mitchell, Judge Carrie Runge, Judge Jacqueline Shea-[B]rown, Judge Bruce Spanner and Judge Sam Swanberg, Plaintiffs, vs. Michael Killian, Franklin County Clerk and Clerk of the Superior Court, Defendants,* Franklin County Superior Court No. 18-2-50285-11." CP at 3, 2. The order of appointment identifies RCW 36.27.030 as the authority for the appointment, indicating that "the Prosecuting Attorney of Franklin County is unable to discharge the duties of his office due to a disability arising from the requirements and limitations of Rules of Professional Conduct, Rule 1.7." *Id.* at 2. The order of appointment directs that Mr. Kamerrer shall be compensated by Franklin County for the professional services he provides to the judges.

Both Prosecutor Sant and Franklin County sought review in this court of the order of appointment. Ultimately, this court granted discretionary review on the issue of whether the Franklin County Superior Court judges validly issued their "Order of Appointment," signed May 21, 2018, under RCW 36.27.030.[4]

ANALYSIS

Standard of Review

Respondent judges contend that this court should apply an abuse of discretion standard of review, asserting that in this "unique and local case" the superior court judges

---

[4] This court also granted a RAP 9.11 motion to create a record for review.

"were in the best position to decide whether the Order of Appointment was necessary" and, thus, that this court should defer to that decision. Br. of Resp'ts at 13. But this case concerns the meaning and proper application of RCW 36.27.030, under which the appointment order issued. Accordingly, review by this court is de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002) (meaning of a statute is a question of law reviewed de novo).

RCW 36.27.030 provides:

When from illness or other cause the prosecuting attorney is temporarily unable to perform his or her duties, the court or judge may appoint some qualified person to discharge the duties of such officer in court until the disability is removed.

When any prosecuting attorney fails, from sickness or other cause, to attend a session of the superior court of his or her county, or is unable to perform his or her duties at such session, the court or judge may appoint some qualified person to discharge the duties of such session, and the appointee shall receive a compensation to be fixed by the court, to be deducted from the stated salary of the prosecuting attorney, not exceeding, however, one-fourth of the quarterly salary of the prosecuting attorney: PROVIDED, That in counties wherein there is no person qualified for the position of prosecuting attorney, or wherein no qualified person will consent to perform the duties of that office, the judge of the superior court shall appoint some suitable person, a duly admitted and practicing attorney-at-law and resident of the state to perform the duties of prosecuting attorney for such county, and he or she shall receive such reasonable compensation for his or her services as shall be fixed and ordered by the court, to be paid by the county for which the services are performed.

In *Osborn v. Grant County*, this court, addressing the above statute, opined that "[t]he [superior] court can appoint a special prosecutor to represent a party *only* when two conditions are met. First, the prosecutor must have the authority and *the duty to represent that party in the given matter*. Second, some disability must prevent the prosecutor from fulfilling that duty." 130 Wn.2d 615, 624-25, 926 P.2d 911 (1996)

(emphasis added). In other words, "[i]f the prosecutor has no duty . . . to represent a party, the trial court cannot appoint special counsel." *Id.* at 625.

The prosecutor's enumerated statutory duties are found in RCW 36.27.020. Concerning those duties, Division Two of the Court of Appeals correctly observed in *Fisher v. Clem*, 25 Wn. App. 303, 307, 607 P.2d 326 (1980), *overruled on other grounds by Brouillet v. Cowles Publ'g Co.*, 114 Wn.2d 788, 793-94, 791 P.2d 526 (1990), that "RCW 36.27.020 does not specifically compel the prosecutor to bring any civil suit." Accordingly, the *Fisher* court held that "the prosecutor's maintenance of any civil proceedings under RCW 36.27.020 is discretionary." *Id.*

This court's decision in *Hoppe v. King County*, 95 Wn.2d 332, 622 P.2d 845 (1980), is also instructive. There, the King County tax assessor sued the county and others challenging a property tax levy. At a preliminary hearing, the trial court ordered the appointment of special prosecutors under RCW 36.27.030, but at a subsequent hearing, the court granted defendants' summary dismissal of the complaint; the court awarded fees to the special prosecutors at another later hearing. The assessor appealed the dismissal, and the defendant county cross appealed the appointment of special prosecutors and their fee award. This court held that the prosecuting attorney had no obligation to represent the assessor and, thus, that the superior court's appointment of special prosecutors under RCW 36.27.030 was improper, as was the fee award. This court explained,

> The power of the court to appoint a special prosecuting attorney is limited to cases where such an appointment is provided by statute. In order for a special prosecutor to be appointed, the prosecuting attorney must be unable

8

to perform a *duty* of that office. . . . [N]othing in the duties of the prosecuting attorney (RCW 36.27.020) requires that officer to bring an action simply because a request is made by another county officer or to provide legal representation. While RCW 36.27.020(2) does require the prosecuting attorney to "[b]e legal adviser to all county . . . officers", this is not a requirement that the prosecuting attorney appear for or represent a county officer. It is certainly true that the King County Prosecuting Attorney and [the assessor] disagreed. It is also true the prosecuting attorney determined [the assessor] was not entitled to representation. This is hardly, however, a disability under RCW 36.27.030 nor is it a conflict of interest as claimed by [the assessor]. The disagreement did not give [the assessor] a warrant to obtain a special prosecutor and bring a lawsuit to assert his particular view of the law. [The assessor] was entitled to second-guess the judgment of the prosecuting attorney. He was not entitled to do so with a special prosecutor at taxpayers' expense.

*Id.* at 339-40 (emphasis added) (some alterations in original) (citations omitted). The

same is true here. The Franklin County prosecutor is not *required* to sue a county official

(e.g., the Franklin County clerk) at the request of another county official (e.g., the

Franklin County Superior Court judges). Accordingly, this is not a question of conflict or

disability that would trigger the availability of a court appointed special prosecutor under

RCW 36.27.030. As this court succinctly stated in *Osborn*, "If the prosecutor has no duty

. . . to represent a party, the trial court cannot appoint special counsel." 130 Wn.2d at

625; *see also id.* at 628 (the prosecutor's enumerated duties (*see* RCW 36.27.020)

"cannot be read so broadly as to allow the prosecutor to be legal counsel for a party in a

lawsuit *against* the county"). Under the somewhat unusual circumstances here, the

appropriate remedy is to vacate the appointment order, leaving the respondents free to

pursue their separate mandamus action against the county clerk, but not at taxpayer

expense.

9

We turn now to the parties' remaining arguments. First, the parties present different views of the events concerning the entry of the appointment order. Respondents characterize the order as administrative, but it is hard to see how the appointment order is merely administrative, when it purports to decide a legal question (i.e., application of RCW 36.27.030) and tangentially impacts a pending case (i.e., the order appoints a special prosecutor for the respondents in the separate mandamus action).

Petitioners focus on the in-chambers signing of the appointment order, with its absence of public scrutiny, apparent bias (i.e., the respondent judges who sign the order benefit from it), and lack of any notice or opportunity to be heard by interested parties (i.e., the prosecutor and the county), contending that for these failings, also, the appointment order must be vacated.

We agree with petitioners. Concerning open proceedings, petitioners contend that the electorate's selection of a prosecutor should not be cast aside behind closed doors. As this court opined in *Dreiling v. Jain,*

> Our state constitution requires that "[j]ustice in all cases shall be administered openly." CONST. art. I, § 10. This guarantees the public and the press a right of access to judicial proceedings and court documents in both civil and criminal cases.
> . . . .
> Proceedings cloaked in secrecy foster mistrust and, potentially, misuse of power. . . . [T]he operations of the courts and the judicial conduct of judges are matters of utmost public concern.

151 Wn.2d 900, 908, 93 P.3d 861 (2004) (first alteration in original). Further, the public's interest in open proceedings is heightened when the matter in question calls for the expenditure of public funds. *In re Dependency of M.H.P.*, 184 Wn.2d 741, 771, 364

P.3d 94 (2015). Here, such expenditure is the potential payment to the appointed special deputy prosecuting attorney of fees paid as unallocated funds.

As for notice and opportunity to be heard, petitioners correctly articulate a cognizable interest in protecting their responsibilities as elected officials from usurpation (i.e., control of budgets and expenditures for the county and the advisement on legal matters to county officials by the prosecutor). *See State ex rel. Banks v. Drummond*, 187 Wn.2d 157, 169, 179-80, 385 P.3d 769 (2016) (prosecuting attorney was "entitled" to bring quo warranto suit for ouster).

Respondents counter that there is no notice and hearing requirement applicable to RCW 36.27.030, citing *State v. Tracer*, 173 Wn.2d 708, 717 n.7, 272 P.3d 199 (2012). While it is true that this court rejected the State's argument that the superior court cannot appoint a substitute deputy prosecuting attorney absent a formal hearing with notice and opportunity to be heard, this court did so because the argument as presented was based on citation to foreign jurisdictions with statutory schemes for the judicial appointment of prosecuting attorneys that are different from RCW 36.27.030. *See id.* But, as noted, under *Drummond*, if the prosecutor is "entitled" to seek ouster of a usurper via a quo warranto action, the prosecutor indeed appears to have sufficient interest to trigger notice and an opportunity to be heard before any compromise of that interest occurs via an RCW 36.27.030 appointment. 187 Wn.2d at 169. Moreover, *Tracer* is distinguishable. *Tracer* involved a prosecutor's failure to attend a session of the court, which is governed by the second paragraph of RCW 36.27.030. *See id.* at 717-18. The appointment order here rests solely on the first paragraph of RCW 36.27.030.

Turning to the respondents' remaining arguments, the judges contend that regarding the Franklin County prosecutor's initial appointment of Dale Kamerrer as the judges' special deputy prosecutor, once the appointment was made, the prosecutor "lacked the authority" to later revoke his appointment. Br. of Resp'ts at 24. That is not so. Respondents' contention ignores the plain language of the statutes that authorized such appointments. RCW 36.27.040 provides the authority for such appointments. The statute states in relevant part, "The prosecuting attorney may appoint one or more special deputy prosecuting attorneys upon a contract or fee basis whose authority shall be limited to the purposes stated in the writing signed by the prosecuting attorney. . . . The prosecuting attorney shall be responsible for the acts of his or her deputies and *may revoke appointments at will.*" RCW 36.27.040 (emphasis added); *see also* RCW 36.16.070 ("The officer appointing a deputy . . . shall be responsible for the acts of his or her appointees . . . and *may revoke each appointment at pleasure.*" (emphasis added)). Accordingly, the prosecutor did not lack authority, as respondents contend, to terminate his initial appointment of Dale Kamerrer as special deputy prosecutor to assist respondents in settlement.

Respondents also rely heavily on *Westerman v. Cary*, 125 Wn.2d 277, 892 P.2d 1067 (1994), but that case does not require a different result. There, this court held that the appointment of a special prosecutor was proper, but that case has key factual differences. First, the *Westerman* prosecutor entered an appearance and undertook representation of the district court when the public defender sued the court challenging the court's new bail rule. However, despite acting as attorney for the district court, the

prosecutor advocated a position directly contrary to that of the district court. *Id.* at 301. This court noted that "RCW 36.27.020 does not except from the duty to defend those matters in which the prosecutor disagrees with his county or state client." *Id.* at 300. The Rules of Professional Conduct required the prosecutor to withdraw if his representation of a client was materially limited by his responsibilities to another client, a third person, or his own interests. *Id.* Because of the prosecutor's contradictory position to his client, including his actions at trial, the superior court appropriately appointed a special prosecutor to defend the district court under RCW 36.27.030. *Id.* at 301. This court also opined, "Where representation of two different public bodies requires the prosecutor to take directly adversary positions in the same case, a conflict exists," and "in situations which involve actual controversy (legal or factual) between the two public bodies, it would be the duty of the [prosecuting] attorney to withdraw from one representation." *Id.* at 300 (alteration in original). By contrast, in the present case, the Franklin County prosecutor has never appeared in the separate mandamus action filed by the respondents. The prosecutor represents neither the clerk nor the respondents in that matter, and the respondent judges are the plaintiffs in the mandamus action, not the defendants. Finally, the judges in the mandamus action are not being sued for an official action they took within their powers. As discussed above, this case is more like *Hoppe*; the judges are

free to pursue their separate mandamus action against the clerk, but not at taxpayer expense.[5]

Finally, respondents request attorney fees. A party is entitled to attorney fees on appeal if a contract, statute, or recognized ground of equity permits recovery of attorney fees at trial and the party substantially prevails. *Hwang v. McMahill*, 103 Wn. App. 945, 954, 15 P.3d 172 (2000). Because we vacate the appointment order, respondents have not prevailed and are not entitled to fees.

## CONCLUSION

The primary issue in the present matter before this court is the validity of the order by which the respondent judges appointed their own special deputy prosecuting attorney under RCW 36.27.030 for use in a separate proceeding. Because the prosecutor had no duty to initiate a civil suit at the request of the respondents under the precedent as discussed, the appointment order is invalid. Accordingly, we vacate the order of appointment. We also deny respondents' request for attorney fees.

---

[5] Respondents also urge this court to hold that LGR 3, the local rule directing the clerk to maintain paper files, is a lawful court rule with which the clerk must comply. Br. of Resp'ts at 14, 21. But review has not been sought of LGR 3, and the respondents admit as much. *Id.* at 14 ("The legality of LGR 3 is not challenged in this action."); *see also* Mot. for Discr. Review at 1-2 (noting that resolving the dispute between the bench and the clerk "is not before this Court in the instant case"). The current matter deals "solely" with the "validity" of the "Order of Appointment." Mot. for Discr. Review at 1, 2, 3. While the efficacy of LGR 3 is relevant to the separate mandamus action, it has no bearing on the appointment order at issue here. We decline respondents' belated request to opine on the efficacy of LGR 3.

No. 95945-5

_Madsen, J._

WE CONCUR:

_Johnson, J._

_Owens, J._

_Stephens, J._

_Wiggins, J._

_González, J._

_Gordon McCloud, J._

_Yu, J._